MARK LOWELL, J. B. COTTON, F. N. BANK OF ST. JOHNS-
BURY v. EST. OF N. W. FRENCH.

*Distribution of Insolvent Estate.    Probate Court.*

When a note is allowed by the commissioners against the insolvent estate of a deceased surety, and afterwards a dividend is paid on the note by the trustees of the insolvent principals, who have assigned, in the final distribution of such surety's estate by the Probate Court, the owner of the note is entitled to a dividend *only on the balance*, and not on the amount so allowed.

HEARD at the March Term, 1881, Essex County, ROSS, J., presiding.    Appeal, from the Probate Court; and the decree of that court, affirmed.

AGREED STATEMENT.

The above named parties hereby enter into the stipulation following, which is to be in lieu of any copy of record from the Probate Court, and upon which the claims and rights of the respective parties are to be submitted and determined by the County Court, and also by the Supreme Court, if either of said parties shall elect to carry the case to said court.

Charles W. King, administrator of said Nathaniel W. French, gave due notice that he would present his account as such admin-

istrator for settlement by the Probate Court, on the 9th day of September, 1880, at Guildhall. It appeared from the report of the commissioners, that said Mark Lowell proved a claim before said commissioners for contribution against said N. W. French, with interest thereon to November 14, 1876, at $1634.96 ; said Mark Lowell and N. W. French, having been sureties on a certain note signed by French Bros., a firm doing business at Lewiston, Maine, and said Mark Lowell having been obliged to pay said note ; this claim was made by him for contribution. It was agreed that said proof should be reduced to the sum of $493 by reason of certain sums received by said Lowell from collateral securities held by him.

Mark Lowell also proved before said commissioners a note with interest to November 14, 1876, for the sum of $4391.03 ; said note was signed by said French Bros. and by said N. W. French, as surety, and was made and dated at Lewiston, Maine ; said note was payable to said Lowell, and its consideration was money by him loaned to said French Bros.

John B. Cotton proved a note before said commissioners with interest to November 14, 1876, for the sum of $1064.41 ; said Cotton signed or endorsed notes for said French Bros. to an amount exceeding the amount of this note, and this note was placed in his hands as collateral security for his liability on said French Bros.' notes. Mr. Cotton paid the notes so endorsed by him. N. W. French was a surety merely upon the note proved. A copy of the note is hereto attached.

The First National Bank of St. Johnsbury proved before said commissioners its notes with interest to November 14, 1876, $3387.59 ; also one other note as endorser with James Powers for J. B. Sumner, with interest to November 14, 1876, $2177.83. At the date of the proofs of these several claims before the commissioners all payments already made thereon were endorsed and deducted by the commissioners, who allowed the several amounts aforesaid:

On the 27th day of December, 1876, said French Bros., being insolvent, made a common-law assignment of all their property, subject to attachment in law or equity, or liable to be seized on execution in payment of their debts, to said Mark Lowell and John B. Cotton, in trust, for the benefit of all their creditors who should become parties thereto. Said assignment did not provide for the release of said debtors. Said trustees took possession of the assigned property of French Bros., and reduced the same to money and paid the dividends hereafter mentioned.

Said Mark Lowell became a party of said assignment as a

creditor, and proved against the estate in the possession of said trustees, the note previously proved and allowed by said commissioners and also the full claim for money paid on the note whereon said N. W. French and himself were co-sureties ; and said Cotton also became a party to said assignment as a creditor, and proved against said estate the full amount of the three notes which he had paid as aforesaid.

Upon the amounts respectively proved by said Lowell and Cotton against the estate in their possession as trustees, each received dividends as follows, to wit: August 17, 1877, a dividend of twenty-five per centum ; May 20, 1879, a dividend of three and a half per centum.

In respect to the claim of said First National Bank, it is agreed as follows : N. W. French endorsed several notes to said bank for James B. Sumner, who was the signer ; and said N. W. French and Jonas Powers endorsed a note to said bank for said Sumner. At some time after said endorsements were made, said Sumner executed a mortgage of certain lands to said French, conditioned to indemnify both said French and Powers for endorsing said notes. After the death of said Sumner, said notes being all unpaid, said French gave his own notes to the bank for the notes endorsed by him alone, but the bank still retained the notes signed by Sumner as collateral. After the death of French, his administrator obtained a foreclosure decree upon said Sumner mortgage, and sold the mortgaged lands for $2490. The bank claimed that it was entitled to the avails of all securities held by French as surety or endorser, and the administrator of French yielded to the claim, and the bank received the proceeds of said sale. The proportion of these proceeds applicable to the notes endorsed by said French alone was $1517.92, and to the note endorsed by French and Powers, $972.08. These notes are the same proved by the bank before the commissioners as above stated, and they were proved for the full amount. The foreclosure of said mortgage and sale of said lands was long after said proof was made. The bank received the same on the      day of      , A. D. 18   .

No notice was given by the administrator that he should claim any reduction of said several proofs other than by oral communication. At the hearing upon said administrator's account aforesaid, he claimed that the said several proofs of Lowell and Cotton should be respectively reduced by the dividends so received, and that the said proof of said bank should be reduced by the amount so received by it, and that a dividend should only be declared on the balance of such proofs after deducting such payments. Said Lowell and Cotton claimed that they were respectively entitled to

receive a dividend on the full amount proved against the estate of said N. W. French, provided that such dividend, together with that received from the trustees aforesaid, did not in the whole exceed the full amount due on their original claims. And said Lowell and Cotton further claimed that the said proof of said bank should be so reduced by the amount so received from said administrator, and that the said bank should receive a dividend upon the amount so reduced.

Said bank claims that their said proof should not be so reduced, and that it was entitled to receive a dividend upon the original proof.

It is agreed that the estate of said N. W. French is insolvent; and that the dividend which said estate will, in any event, pay, together with the amount of dividend received by Lowell and Cotton from said trustees, will not equal the amount of the principal and interest of their respective claims, November 14, 1876, the date when they were proved and allowed by said commissioners.

Upon the foregoing statement of facts, the Probate Court decided that the said proofs of Lowell and Cotton should be reduced by the payments received by them respectively from said trustees under said assignment; and that said bank's proofs should be reduced by the sums received by it from the proceeds of said Sumner mortgaged lands; and said court proceeded to make said reductions and declare a dividend on the balance of said proofs and decreed accordingly.

Now it is further agreed by said parties that all the said creditors whose proofs are so reduced may join in one appeal from said order and decree of said court, and that no objection shall be made or raised thereto, and that this court, and the Supreme Court, if either of said parties shall carry the case to said court, may decide the case of each creditor as if he had filed a separate appeal, and make any such order or decree as the case of either may require, and also any such judgment for costs, for or against either party, jointly or severally, as the case may require.

*Frye, Cotton & White* and *Ossian Ray*, for the plaintiffs.

The surety on a promissory note is an original maker, and is primarily and absolutely liable, as much so as the principal, to any party lawfully holding it. *Bank of Newbury* v. *Richards*, 35 Vt. 281.

The holder of a promissory note has a legal right to hold all parties liable thereon to full payment, whether such parties are

makers, drawers, endorsers, or sureties. In such case the right of double proof exists. *Ex parte Nason*, 70 Me. 363. In accord with these principles the courts of bankruptcy and insolvency have established the rules applicable to cases of double proofs. The first is, " that a holder may prove his claim, under commissions against the drawer, acceptor, and maker, and receives a dividend from each upon his whole claim, provided he does not receive, in the whole, more than his full due." " But there is a distinction in this case, when a holder applies to prove his debt against one party, *after* having received a part of it from another, and when he applies to prove *before* receiving any *payment* or *composition* from another, or *before* a dividend has been declared in his favor, under a commission against another party. Any sum actually received in payment, from any party to a bill, *before* proof, made against another, must be deducted from the amount to be proved against another." *Sohier* v. *Loring*, 6 Cush. 537; *Blacke* v. *Ames*, 8 Allen, 318; *National M. W. Bank* v. *Porter et al.*, 122 Mass. 308; *New Bedford Five Cent Savings Bank* v. *Union Mill Co. et al.*, 128 Mass. 27.

*Poland*, for the defendant.

It is conceded that if the proof had not been made till after this payment by the principals, they could only have proved for the balance due on their debts. Is the equality between creditors, which the law requires, as well as equity, to be destroyed for any such technical reason ? Cases often arise, where claims are properly allowed against an estate, but before distribution they cease to exist, as when proved against the estate of a surety, or one of two joint debtors, and afterward paid by the principal, or one-half paid by the other joint debtor. The uniform practice has been for the Probate Court to make the proper corrections before decreeing distribution. It may be said that no such power is given to the Probate Court by the statute. But it is incident to, and grows out of, the power and duty to make a true *pro rata* distribution. No question was made in the Probate Court, or in the County Court, but that the Probate Court had such power; the claim was, that Cotton and Lowell had the legal right to divi-

dend on the amount of their debts as proved. But they submitted to do, or have the court do, the very thing we claim, as to one of Mr. Lowell's claims. There must be some mode by which a debt which has been paid by other parties, after allowance by commissioners against an estate, can be struck out of the list of creditors ; but the statute provides no mode. But it is claimed that the Probate Court erred in reducing the proofs, by reason of payments, made by the principal, after the claims had been proved before commissioners.

The leading case in this country, under the late bankrupt law, is that of *Howard, Cole & Co.*, 4 N. B. R. 571, in Maryland. Howard, Cole & Co. were in bankruptcy ; also the partner Howard individually. Notes made by Shipley, Roan & Co., . endorsed by Howard, Cole & Co., and also by Howard individually, were proved by the holder against the estate of Howard, Cole & Co., and also against the separate estate of Howard for the full amount. Shipley, Roan & Co., the makers, had become insolvent, and the holders of the notes compromised with them, and received 40 per cent. of the debt *after the debts had been proved*. The claimant insisted, he was entitled to have a dividend from the estate of Howard, Cole & Co., and also from that of Howard, on the full amount of the debt *as proved*, without deducting the 40 per cent. collected of Shipley, Roan & Co. But the court decided, that the proof must be reduced by the application of this 40 per cent.

The opinion of the court was delivered by

ROYCE, Ch. J. N. W. French in his lifetime signed or became liable upon the notes which were allowed by the commissioners upon his estate as surety for the French Brothers. After the allowance, the French Brothers, who were principals upon said notes, made payments to the appellants, which were endorsed upon said notes. French Brothers became insolvent after said allowance was made ; and made an assignment in Maine, and the payments made to the appellants were made by the trustees under said assignment. N. W. French's estate was insolvent; and in the decree of distribution made by the Probate Court the pay-

ments, so made to the appellants, were deducted from the allowances made by the commissioners; and the amounts remaining due were taken as the basis upon which the dividend was made. An appeal was taken from the decree so made, the appellants claiming that a dividend should have been decreed to them upon their claims as allowed by the commissioners. It was the primary duty of the French Brothers to have paid the notes, and thus relieved the surety and his estate from all liability; and it is admitted that if the payments had been made before the notes were presented for allowance, only such sum could have been allowed as appeared to be due. In the distribution of an insolvent estate we see no reason why a payment made by the principal after the allowance should not be treated in the same way that it would have been if made before. In both cases the payment reduces the liability of the estate. While it is true that the payees had the right to regard the surety as a principal, and to enforce his liability as a principal until they had obtained full satisfaction, yet, where there is only a limited fund from which to obtain satisfaction, and the question is made how that fund shall be distributed, creditors, whose claims are equal in right are entitled to share equally in such distribution. Our statute upon the subject of the distribution of insolvent estates requires that that rule shall be observed. If the rule claimed by the appellants should be adopted, no such equality could be preserved; and creditors might obtain dividends upon claims that the estate was not liable for, thus being preferred to other creditors whose claims against the estate were unquestioned. This would be in conflict with all the statutory provisions pertaining to the settlement and distribution of insolvent estates. The payment made to the First National Bank of St. Johnsbury, and which was deducted from the allowance before a dividend was decreed to it, was made from the funds of the principals, so that its case is, in principle, like the cases of the other appellants. In in re *Howard, Cole & Co.*, a well-considered case decided in the U. S. District Court, 4 Nat. Bank. Reg., it was held that where the holders of notes, after they had proved the full amount of their claims against the bankrupt estates of the indorsers, received part payment from the

makers, they were entitled to dividends only on the amount due when the dividends were declared, only.

There was no error in the judgment of the County Court, and it is affirmed, and ordered to be certified back to the Probate Court.